**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| CHARLES CHATHAM, WILLIAM HURST, DAVID HAZARD, WILLIAM BEANBLOSSOM, JOHN S. BERTRAND, JANETT FOSTER, JIM ROONEY, NEOMA MANION, GARY LARSON, CAROL GENZANO, CHARLES VELEZ, LARRY STEVEN ANDERSON, JR, ARLENE BROWN, SUSAN SYBENGA, MICHAEL HOLLENBECK, HEATHER PISTORIUS, KATHRYN DESAUTELL, BART WRIGHT, TAMMY CYR, LARRY STEWART, STEPHEN JOLLEY, CURTIS OATES, SANDRA BEDELL, DILINDA BROWN, THOMAS & KAYE RODDEN, GLORIA LAYTON, JOHNA COCHRAN, CHARLENE WIMBISH, THOM CASTO, JERRY ASBURY, NANCY & DAVID FREID, and JOSEPH FOSS, individually and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>SEARS, ROEBUCK & CO.,<br><br>Defendant. | MDL-1703<br>No. 05 C 2623<br><br>Judge John F. Grady<br><br>**JURY TRIAL DEMANDED**<br><br>**RESTRICTED DOCUMENT BY COURT ORDER (REDACTED AND SCANNED VERSION)** |

**THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT**

Plaintiffs, by their attorneys, bring this action against defendant Sears, Roebuck & Co. ("Sears" or "Defendant"), individually and on behalf of all others similarly situated, and allege the following upon information and belief based upon, *inter alia*, Defendant's advertisements, websites and other publicly available materials and an investigation by their counsel, except for those allegations which pertain to Plaintiffs and their attorneys, which allegations are based upon personal knowledge:

## NATURE OF ACTION

1. This class action is brought under: the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/1 *et seq.*; the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*; the consumer fraud and deceptive business practice acts of other states and the District of Columbia; and breach of warranty under the Magnuson-Moss Warranty Act.[1] Plaintiffs and the Class also bring this action for equitable relief and under the unjust enrichment laws of the state of Illinois, or in the alternative, the unjust enrichment laws of the states wherein Plaintiffs reside or purchased Sears Craftsman tools, as alleged below.

2. Defendant Sears is a major marketer and retailer of tools sold under its proprietary Craftsman label. Sears Craftsman tools are nationally marketed, and Sears advertises and promotes the Craftsman brand, generally, as being made in the United States of America ("Made in USA"). Sears also advertises Craftsman tools as being of higher quality *because* they are made in America by "American workers." In so doing, Sears is exploiting consumers' patriotism and desire to employ workers at home, and is representing that all Craftsman tools are domestically made. The "Made in USA" claim by Sears regarding Craftsman is misleading to consumers because many, if not most, Craftsman tools are not "Made in USA." Rather, many Craftsman tools are foreign-made or contain significant foreign components, making the "Made in USA" claim deceptive.

3. Sears' use of the "Made in USA" claim for Craftsman tools was designed to create an impression relating to its products. The use of "Made in USA" promotions also

[1] In its order dated May 17, 2006, the Court dismissed (a) all non-Illinois plaintiffs' claims under the Illinois Consumer Fraud Act and Illinois Deceptive Trade Practices Act, and (b) all express warranty claims under the Magnuson Moss Warranty Act. These claims are re-stated herein solely for the purpose of preserving Plaintiffs' right to appeal.

allowed Sears to sell Craftsman products at a price higher than it would otherwise be able to charge, and Plaintiffs and the class suffer damage thereby.

4. Defendant Sears has acknowledged the wrongfulness of its conduct by taking remedial steps in response to similar lawsuits filed around the country. Shortly after the first lawsuit alleging improper "Made in USA" claims was filed in New York Supreme Court on December 2, 2004, Sears began instructing employees to "black out" or "tape over" "Made in USA" claims on the Craftsman tools in its retail stores. However, the covering up of "Made in USA" did not completely eliminate the false representations, and millions of consumers had been, and continue to be, misled by the improper claims of country of origin.

## THE PARTIES

5. Plaintiff Charles Chatham is a citizen of the State of Alabama. Between 2003 and the present, at a Sears store in the Oxford Mall, in Oxford, Alabama, Plaintiff Chatham purchased a Craftsman edger, and Craftsman rakes, shovels, sledge hammers, and garden tools. Shortly before making his purchases, Plaintiff Chatham saw and relied on Sears advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on Craftsman posters in the Sears store in Oxford Mall, on Bob Vila television commercials which he viewed from his home, and on the packaging of the tools he purchased. At the time of his purchases, and as a result of seeing these posters, television commercials, and packaging, Plaintiff Chatham believed that each Craftsman tool he purchased was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Chatham was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On post-purchase inspection, he found an imprint on his Craftsman Edger, which

indicates it was made in Canada. On information and belief, Plaintiff Chatham's above-referenced Craftsman tools were not made in the United States. Plaintiff Chatham further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Chatham is invoking the laws of Alabama and Illinois.

6. Plaintiff William Hurst is a citizen of the State of Connecticut. Between December 2002 and the present, Plaintiff Hurst purchased Craftsman wrenches, compressors, a sand blaster, a shop wet/dry vacuum cleaner, a belt sander, screwdrivers, tool boxes, and a table saw, from Sears stores in Meriden, Connecticut; Torrington, Connecticut; Winsted, Connecticut; Farmington, Connecticut; and online. Shortly before making his purchases, Plaintiff Hurst saw and relied on Sears' advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in magazine advertisements, on posters in the Sears stores in Connecticut, on the Sears Craftsman website, in Sears catalogs, and on television advertisements viewed from his home in Connecticut. At the time of his purchases, and as a result of seeing these ads, posters, website, catalogs, and television commercials, Plaintiff Hurst believed that each Craftsman tool was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Hurst was unaware his Craftsman tools were not made in the United States, until on or about the time this lawsuit was first filed. On information and belief, Plaintiff Hurst's above-referenced Craftsman products were not made in the United States; some were marked "Taiwan" and others "China". Plaintiff Hurst further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman

tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Hurst is invoking the laws of Connecticut and Illinois.

7. Plaintiff David Hazard is a citizen of the State of Florida. Between December 2002 and the present, Plaintiff Hazard purchased a Craftsman table saw, screwdriver set, hammer, stapler and drill products, from Sears stores in Coral Springs, Florida; Orlando, Florida, Altamonte, Florida; and Fort Lauderdale, Florida. Shortly before making these purchases, Plaintiff Hazard saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on Bob Vila television commercials viewed from his home in Florida, and in Sears sales circulars. Plaintiff Hazard was also told the Craftsman line was Made in USA by Sears store employees, who were instructed and trained to market the tools as such. At the time of his purchases, and as a result of seeing the television commercials, Sears sales circulars, and speaking with Sears employees, Plaintiff Hazard believed that each of the above-referenced Craftsman products were made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Hazard was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Hazard's above-referenced Craftsman tools were not made in the United States. Plaintiff Hazard further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Hazard is invoking the laws of Florida and Illinois.

8. Plaintiff William Beanblossom is a citizen of the State of Illinois. Mr. Beanblossom is a senior citizen, 72 years old. He grew up believing that the Craftsman name was

synonymous with American-made quality. He desires to buy American-made products when possible.

a) In April to May of 2004, Plaintiff Beanblossom purchased a Craftsman air compressor from a Sears store in Lansing, Illinois.

b) Before making his purchase, Plaintiff Beanblossom saw advertisements for Craftsman products in magazines, newspapers, and on displays and banners in a Sears store, which lead Plaintiff Beanblossom to believe that all Craftsman products were "Made in USA." He recalls seeing advertisements in the newspaper to the effect that Craftsman products were made in America for Americans. He saw Sears' advertisements on television, which also mentioned that Sears' Craftsman products were made in America and that Craftsman and American quality go hand in hand. Specifically, he remembers seeing an advertisement for the Craftsman Clench Wrench that stated that Craftsman hand tools are "Made in America"; an advertisement for Craftsman Grip Master pliers that had an overlay of "Made in America" on the screen; and a Craftsman advertisement with Bob Vila in which it was stated that it was an "American Tradition" to "do-it-yourself", thus linking the Craftsman brand name with America, and touting Craftsman hand tools as "Made in America". These advertisements were run by Sears at various times between at least 2000-2003. He also saw pamphlets which gave him the impression that all Craftsman products were made in America. Prominently placed on the cover page of each of the pamphlets is the following language: "SEARS HARDWARE, Bringing America's Best to You, CRAFTSMAN". GROUP Exhibit P: WB000051-57, WB000058-64,

WB000065-71, WB000072-76, WB000077-81, WB000082-86, WB000087-91.[2] He was also told at times by Sears' store personnel that Craftsman products were made in America.

c) At the time of these purchases, and as a result of seeing the Sears Craftsman advertisements as stated above, Plaintiff Beanblossom believed that the Craftsman air compressor was made in the United States. As a result of Sears' actions, as alleged below, Plaintiff Beanblossom was unaware his Craftsman product was not made in the United States, until approximately the time this lawsuit was filed. Plaintiff Beanblossom's air compressor was actually made in China. Plaintiff Beanblossom further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased the Craftsman product in the first instance, and/or not at the inflated and premium prices he paid for the product. Plaintiff Beanblossom is invoking the laws of Illinois.

9. Plaintiff Janett Foster is a citizen of the State of Indiana. Between October 2003 and the present, Plaintiff Foster purchased Craftsman tools from Sears' stores in Bedford, Indiana; Bloomington, Indiana; and Bowling Green, Kentucky, including a 320-piece mechanics tool set, a 33-gallon vertical air compressor, a ratcheting tool set, a generator, a professional tool set, a tool chest, and 40-piece tool set, a socket set, a circular saw, a drill, a 19.2 volt cordless combo kit, a mig welder and welding/cutting outfit, and three infrared laser pointing thermometers. Shortly before making her purchases, Plaintiff Foster saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on advertisements in the tool sections of the above-referenced Sears stores in Indiana and Kentucky, in magazine advertisements, and on the packaging of the Craftsman tools she purchased. At the time of purchases, and as a result of seeing these ads and packaging,

[2] Exhibits are included in Appendix I and Appendix II to the Third Amended Consolidated Class Action Complaint. Appendix II includes Exhibits Q through W, which are restricted documents pursuant to the Court's Order.

Plaintiff Foster believed that each of the above-referenced tools was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Foster was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Foster's above-referenced Craftsman products were not made in the United States. Plaintiff Foster further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Foster is invoking the laws of Indiana, Kentucky, and Illinois.

10. Plaintiff Jim Rooney is a citizen of the State of Maine. Within three years prior to the commencement of this action, Plaintiff Rooney purchased from Sears stores in the state of Maine, Craftsman hand tools, ratchets, sockets, and an air compressor. Shortly before making his purchases, Plaintiff Rooney saw and relied on advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in the Sears stores in Maine, and on the labels/packaging for the above-referenced Craftsman tools. At the time of purchase, and as a result of seeing these signs and packaging, Plaintiff Rooney believed that each tool was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Rooney was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Rooney's above-referenced Craftsman tools were not made in the United States. Plaintiff Rooney further alleges that, but for Sears' material misrepresentations alleged herein, he would not have

purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Rooney is invoking the laws of Maine and Illinois.

11. Plaintiff Neoma Manion is a citizen of the State of Missouri. Between December 2002 and the present, at a Sears store in Missouri, Plaintiff Manion purchased a Craftsman shovel, hoe, 40-piece ratchet set, 16-inch pair of pliers, three pairs graduating vice grips, two 15-piece sets of wrenches, a set of 10 screwdrivers, and a workshop hand stapler. Shortly before making her purchases, Plaintiff Manion saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in the Sears store and in Sears' magazine advertisements, and on the packaging/labels of the tools themselves. At the time of purchase, and as a result of seeing these magazine ads and packaging, Plaintiff Manion believed that each Craftsman tool was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. Plaintiff Manion further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Manion is invoking the laws of Missouri and Illinois.

12. Plaintiff Gary Larson is a citizen of the State of Montana. Between December 2002 and the present, at a Sears store in Everett, Montana, Plaintiff Larson purchased a Craftsman hand tool set containing open and closed end wrenches, sockets, and screwdrivers; three mechanics' tool chests and accessories, such as mats for the chests; a two-cycle leaf blower; a pressure washer; a floor jack; and a four-cycle lawn edger. Shortly before making his purchases, Plaintiff Larson saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in newspaper and television advertisements, Sears' catalogs, and materials relating to the Sears' Craftsman tool

club (of which he was a member), and on the labels/packaging for the tools themselves. At the time of purchase, and as a result of seeing these ads, materials, and packaging, Plaintiff Larson believed that each of his above-referenced Craftsman tools was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Larson was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Larson's above-referenced Craftsman tools were not made in the United States. Plaintiff Larson further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Larson is invoking the laws of Montana and Illinois.

13. Plaintiff Carol Genzano is a citizen of the State of New Jersey. Within three years prior to the commencement of this action, at a Sears store in Morristown, New Jersey, Plaintiff Genzano purchased Craftsman open-end wrenches, box wrenches, pliers, and screwdrivers. Shortly before making those purchases, Plaintiff Genzano and her family saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on the labels/packaging for the above-referenced Craftsman tools. At the time of purchase, and as a result of seeing the Craftsman packaging, Plaintiff Genzano believed that each tool was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Genzano was unaware the Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Genzano's above-referenced Craftsman tools were not made in the United States. Plaintiff

Genzano further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Genzano is invoking the laws of New Jersey and Illinois.

14. Plaintiff Charles Velez is a citizen of the State of New York. In approximately 2002-2003, Plaintiff Velez purchased Craftsman tools from Sears' stores in Lake Success, New York, including wrenches, screwdrivers, hammers, and a jack. Shortly before making his purchases, Plaintiff Velez saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in Sears stores and on Craftsman labels, as well as a NASCAR "Race Guide" containing the words "CAN YOU NAME 1600 THINGS STILL MADE IN AMERICA?" in large print, followed by "Over 1,600 Craftsman hand tools are made in the U.S.A." in small print, which Plaintiff Velez viewed in a national magazine. At the time of purchase, Plaintiff Velez believed that each tool was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Velez was unaware his Craftsman tools were not made in the United States until approximately the time this lawsuit was filed. Some of Plaintiff Velez' Craftsman tools, including his jack, were found on post-purchase inspection to bear the word "China" in small markings. On information and belief, Plaintiff Velez' above-referenced Craftsman tools were not made in the United States. Plaintiff Velez further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Velez is invoking the laws of New York and Illinois.

15. Plaintiff Larry Anderson is a citizen of the State of North Carolina. Between June 2000 and December 2003, Plaintiff Anderson purchased dozens of Craftsman tools from Sears store in the Carolina Mall in Concord, North Carolina, including a digital volt-ohm meter, a floor jack, three battery chargers, pliers, ratchets, sockets, wrenches, hammers and other hand tools, air tools and accessories, electrical tools and accessories, and a shovel, rake, hoe, garden hose and other lawn and garden tools. Shortly before making his purchases, Plaintiff Anderson saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and included depictions of the United States flag, on the product labels and stamps, and in Sears catalogs. Specifically, Plaintiff Anderson saw the phrase *"Create the ultimate American-made tool collection without duplication"* in a Sears catalogue prior to his Craftsman product purchases. At the time of purchases, and as a result of seeing these statements, Plaintiff Anderson believed that each Craftsman product he purchased was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Anderson was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. Plaintiff Anderson's four Craftsman digital volt-ohm meters and several of his Craftsman pliers were found, on post-purchase inspection, to bear the word "China" in small markings. On information and belief, Plaintiff Anderson's other above-referenced Craftsman tools were not made in the United States. Plaintiff Anderson further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance and/or not at the inflated and premium prices he paid for those tools. Plaintiff Anderson is invoking the laws of North Carolina and Illinois.

16. Plaintiff Arlene Brown is a citizen of the State of Oklahoma. In approximately April 2004, Plaintiff Brown purchased a Craftsman lawnmower at a Sears store in Tulsa, Oklahoma. Shortly before making her purchase, Plaintiff Brown saw and relied on the advertising for the lawnmower stated "Made in USA," and/or included depictions of the United States flag, at the Sears store where she made her purchase. At the time of purchase, and as a result of seeing this advertising, Plaintiff Brown believed that the Craftsman lawnmower was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Brown was unaware her Craftsman mower was not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Brown's lawnmower was not made in the United States. Plaintiff Brown further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased the Craftsman lawnmower in the first instance, and/or not at the inflated and premium prices she paid for the product. Plaintiff Brown is invoking the laws of Oklahoma and Illinois.

17. Plaintiff Susan Sybenga is a citizen of the State of Oklahoma. Between 2002 and the present, at a Sears store in Tulsa, Oklahoma, Plaintiff Sybenga purchased a Craftsman drill, socket wrench set, circular saw, crescent wrench set, soldering iron, flashlight, tool chest, and allen-wrench set. Shortly before making her purchases, Plaintiff Sybenga saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on the packaging for the tools or on the tools themselves. At the time of purchase, and as a result of seeing these statements, Plaintiff Sybenga believed that each Craftsman tool was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as

alleged below, Plaintiff Sybenga was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Sybenga's above-referenced Craftsman tools were not made in the United States. Plaintiff Sybenga further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Sybenga is invoking the laws of Oklahoma and Illinois.

18. Plaintiff Michael Hollenbeck is a citizen of the State of Oregon. Within three years prior to the commencement of this action, Plaintiff purchased Craftsman tools from Sears stores in Oregon, including a Craftsman tool set, automotive tools, and Craftsman hand tools, including screwdrivers. Shortly before making each of his Craftsman tool purchases, Plaintiff Hollenbeck saw and relied on Sears advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in Sears catalogs, Sears newspapers advertisements, television advertisements, and on the labels for Craftsman tools. At the time of purchase, and as a result of seeing those catalogs, ads, and labels, Plaintiff Hollenbeck believed that each Craftsman tool he purchased was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Hollenbeck was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Hollenbeck above-referenced Craftsman tools were not made in the United States. Plaintiff Hollenbeck further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Hollenbeck is invoking the laws of Oregon and Illinois.

19. Plaintiff Heather Pistorius is a citizen of the State of Pennsylvania. Between December 2002 and the present, Plaintiff Pistorius purchased from Sears stores in Pennsylvania, Craftsman hammers, wrenches, a lawnmower, a utility light, a weedwacker, and screwdrivers. In making her purchases, Plaintiff Pistorius relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, including Craftsman "Made in USA" images on the Sears, Craftsman and NASCAR websites; Sears flyers; and on the labels or stamps on her Craftsman tools. At the time of purchase, and as a result of viewing these ads, Plaintiff Pistorius believed that each Craftsman tool was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Pistorius was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. Some of Plaintiff Pistorius' Craftsman tools, on post-purchase inspection, were found to bear the word "China" in small markings. On information and belief, Plaintiff Pistorius' above-referenced Craftsman tools were not made in the United States. Plaintiff Pistorius further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Pistorius is invoking the laws of Pennsylvania and Illinois.

20. Plaintiff Kathryn DeSautell is a citizen of the State of Texas. Between December 2002 and the present, Plaintiff DeSautell purchased a Craftsman bench grinder, table saw, vise grips, corded drill, shovel, and hand tools, from the Sears store in Plano, Texas. Shortly before making her purchases, Plaintiff DeSautell saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on the in-store Sears banners, magazine ads, and on a home-improvement show on television. At the

time of purchase, and as a result of seeing the banners, magazine ads, and television show, Plaintiff DeSautell believed that each tool was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff DeSautell was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff DeSautell's Craftsman tools were not made in the United States. On post-purchase inspection, Plaintiff DeSautell found that some of her Craftsman tools bore a stamp reading "Japan." Plaintiff DeSautell further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff DeSautell is invoking the laws of Texas and Illinois.

21. Plaintiff Bart Wright is a citizen of the State of Utah. Between 2002 and 2003, Plaintiff Wright purchased Craftsman tools from Sears store in Murray, Utah, including ratchets, wrenches, sockets and screwdrivers. Shortly before making his purchases, Plaintiff Wright saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on the labels and forged on the tools themselves. Plaintiff Wright was also told by a Sears employee that the Craftsman tools were made in the United States. At the time of his purchases, and as a result of seeing these advertisements, Plaintiff Wright believed that each Craftsman tool he purchased was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Wright was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Wright's Craftsman tools were not made in the

United States. Plaintiff Wright further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Wright is invoking the laws of Utah and Illinois.

22. Plaintiff Tammy Cyr is a citizen of the State of Wisconsin. Plaintiff Cyr purchased, within three years prior to commencement of this action, Craftsman tools from Sears stores in Green Bay, Wisconsin; Marinette, Wisconsin; Eau Claire, Wisconsin; and Ashland, Wisconsin, including ratchets, wrenches, screwdrivers, center punches, roll punches and breaker bars. In making those purchases, Plaintiff Cyr relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag. Shortly before making her purchases, Plaintiff Cyr saw and relied on multiple "Made in USA" claims and United States flag images on Craftsman posters and merchandise racks inside of Sears stores in Wisconsin, as well as magazine ads and television commercials for Craftsman tools. Additionally, Plaintiff Cyr saw and relied on the fact that many of her Craftsman tools were labeled or stamped "USA" or contained some other similar designation of U.S. origin. At the time of her purchases, and as a result of viewing those magazine and television ads, statements and images, Plaintiff Cyr believed that Craftsman each tool was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Cyr was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. Some of her Craftsman tools were found on post-purchase inspection to bear Canadian patent numbers. On information and belief, Plaintiff Cyr's steel tools including her ratchets, wrenches and screwdrivers, are made of steel of foreign origin. Plaintiff Cyr further alleges that, but for

Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Cyr is invoking the laws of Wisconsin and Illinois.

23. Plaintiff Larry Stewart is a citizen of the State of South Carolina. Plaintiff Stewart purchased several Craftsman products from the Sears store in Columbia Mall, Columbia, South Carolina, between 2002 and 2004, including a Craftsman table saw, torpedo level, 30-foot tape, cordless drill, plunge router, toolbox, belt sander, and battery charger. In making his purchases, Plaintiff Stewart relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on television and in magazines. At the time of purchase, and as a result of seeing those Craftsman ads on television and in magazines, Plaintiff Stewart believed that each Craftsman tool was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Stewart was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Stewart's Craftsman tools were not made in the United States. His Craftsman table saw, on post-purchase inspection, was found to have a "Made in Taiwan" imprint on it; and his Craftsman 30-foot tape was found to have a marking indicating it was made in the Dominican Republic. Plaintiff Stewart further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Stewart is invoking the laws of South Carolina and Illinois.

24. Plaintiff Stephen Jolley is a citizen of the State of Pennsylvania. Plaintiff Jolley purchased Craftsman products from the Sears store in the Oxford Valley Mall, in Langhorne,

Pennsylvania in the summer of 2003, including a Craftsman hand ax. In making his purchases, Plaintiff Jolley relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on the label of the hand ax. At the time of purchase, and as a result of seeing that label, Plaintiff Jolley believed that the Craftsman tool was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Jolley was unaware his Craftsman tool was not made in the United States, until approximately the time this lawsuit was filed. Plaintiff Jolley's Craftsman tool was not made in the United States; on post-purchase inspection, it was found to have a "China" imprint on it. Plaintiff Jolley further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman in the first instance, and/or not at the inflated and premium prices he paid for the ax. Plaintiff Jolley is invoking the laws of Pennsylvania and Illinois.

25. Plaintiff Curtis Oates is a citizen of the State of Indiana. Plaintiff Oates purchased several Craftsman products from the Sears stores in Valparaiso, Indiana; and Portage, Indiana, in 2003, including an air ratchet, air compressor, and several hand tools. In making his purchases, Plaintiff Oates relied on the Sears salesperson, who told him that all Craftsman products are made in the United States, as well as the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on the label of the tools. At the time of purchase, and as a result of seeing the Craftsman ads and labels and speaking with Sears personnel, Plaintiff Oates believed that each Craftsman tool was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Oates was unaware his Craftsman tools were not made in the United States, until approximately the time

this lawsuit was filed. His Craftsman tools were not made in the United States; on post-purchase inspection, they were found to have "China" or the names of other countries imprinted on them. Plaintiff Oates further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Oates is invoking the laws of Indiana and Illinois.

26. Plaintiff Sandra Bedell is a citizen of the State of New York. In approximately 2002, Plaintiff Bedell purchased a Craftsman hammer, screwdriver, drill, and router from a Sears store in New York. Before making her purchases, Plaintiff Bedell viewed and relied on the advertising for the Craftsman line, on television and in the Sears stores, which stated "Made in USA," and/or included depictions of the United States flag. At the time of her purchases, and as a result of seeing the Craftsman ads, Plaintiff Bedell believed that each Craftsman tool she purchased was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Bedell was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Bedell's Craftsman tools were not made in the United States. Plaintiff Bedell further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Bedell is invoking the laws of New York and Illinois.

27. Plaintiff Dilinda Brown is a citizen of the State of Mississippi. Plaintiff Brown purchased a Craftsman weedwacker from the Sears' store in Jackson, Mississippi, in 2003. Shortly before making her purchases, Plaintiff Brown viewed and relied on the advertising for

the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on the label of the tool. At the time of purchase, and as a result of seeing the packaging, Plaintiff Brown believed that the Craftsman tool was made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Brown was unaware her Craftsman tools was not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Brown's Craftsman weedwacker was not made in the United States. Plaintiff Brown further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased the Craftsman tool in the first instance, and/or not at the inflated and premium prices she paid for that tool. Plaintiff Brown is invoking the laws of Mississippi and Illinois.

28. Plaintiffs Thomas and Kaye Rodden are citizens of the State of Mississippi. In late 2002, Plaintiffs Rodden purchased a Craftsman drill, air compressor, upright tool box, lawn mower, and several small hand tools, from the Sears store in Jackson, Mississippi. Shortly before making their purchases, Plaintiffs Rodden saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in Sears advertisements, including Bob Vila promotions on television. At the time of purchase, and as a result of seeing those advertisements and commercials, Plaintiffs Rodden believed that the Craftsman tools were made in the United States, and that belief was the primary factor in their decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiffs Rodden were unaware their Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. Plaintiffs Rodden now believe that their Craftsman products were not made, or substantially made, in the United

States, since on post-purchase inspection, some of the above tools were found to have the word "China" stamped on them. Plaintiffs Rodden further allege that, but for Sears' material misrepresentations alleged herein, they would not have purchased the Craftsman tools in the first instance, and/or not at the inflated and premium prices they paid for those tools. Plaintiffs Rodden are invoking the laws of Mississippi and Illinois.

29. Plaintiff Gloria Layton is a citizen of the State of Ohio. Between December 2002 and May 2006, Plaintiff Layton purchased a Craftsman tool set, socket set, drill, and drill bits, from the Sears store in the Ohio Valley Mall in St. Clairsville, Ohio. Shortly before making her purchases, Plaintiff Layton saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on Sears sale advertisements, and in television, magazines, and on a banner in the Sears store. At the time of her purchases, and as a result of seeing those advertisements, Plaintiff Layton believed that the Craftsman tools were made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Layton was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Layton's Craftsman tools were not made in the United States. Indeed, many of them were found, on post-purchase inspection, to bear the word "China" on them. Plaintiff Layton further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Layton is invoking the laws of Ohio and Illinois.

30. Plaintiff Johna Cochran is a citizen of the state of Washington. Between December 2002 and the present, at the Sears store located in Vancouver, Washington, Plaintiff

Cochran purchased a Craftsman circular saw, regular saw, jigsaw, two sanders, three drills, dremel, router, 145-piece mechanics tool set, drivesocket set, a field tech tool set, long-handle plier set, arc plier set, locking pliers set, mini plier set, linemans plier set, two 26-piece wrench sets, crescent wrenches, screwdriver sets, nut drivers, allen wrenches sets, speed wrenches, pipe wrenches, 300+-piece mechanics tool set, levels, and squares. Shortly before making her Craftsman purchases, Plaintiff Cochran saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on Sears store banners, and in Craftsman television ads and Sears ads in magazines. At the time of her purchases, and as a result of seeing the Craftsman advertisements on television, in magazines, and in the Sears store in Washington, Plaintiff Cochran believed that the above-referenced Craftsman tools were made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Cochran was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Cochran's Craftsman tools were not made in the United States. Plaintiff Cochran further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Cochran is invoking the laws of Washington and Illinois.

31. Plaintiff Charlene Wimbish is a citizen of the state of Virginia. Between December 2002 and the present, at the Sears store located in Virginia Beach, Virginia, Plaintiff Wimbish purchased a Craftsman wrench set, leaf blower, and two electric chain saws. Shortly before making her purchases, Plaintiff Wimbish saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States

flag. At the time of her purchases, and as a result of seeing the Craftsman advertisements, Plaintiff Wimbish believed that the Craftsman tools were made in the United States, and that belief was the primary factor in her decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Wimbish was unaware her Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Wimbish's Craftsman tools were not made in the United States. Plaintiff Wimbish further alleges that, but for Sears' material misrepresentations alleged herein, she would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices she paid for those tools. Plaintiff Wimbish is invoking the laws of Virginia and Illinois.

32. Plaintiff Thom Casto is a citizen of the State of West Virginia. In 2003, Plaintiff Casto purchased a Craftsman cordless drill, and rechargeable flashlight; in 2004, he purchased a Craftsman screw driver set; and in 2005, he purchased a Craftsman floodlight, screw out bit, and glasses with LED lights. All these purchases were made at the Town Center Sears in Charleston, West Virginia. Shortly before making these purchases, Plaintiff Casto saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on Bob Vila television commercials viewed from his home in West Virginia, paper Sears ad inserts, on banners at the Sears store in West Virginia, and on materials relating to the Craftsman Club (of which Plaintiff Casto was a member). At the time of his purchases, and as a result of seeing the television commercials, ad inserts, in-store banners, and Craftsman Club membership materials, Plaintiff Casto believed that each of the above-referenced Craftsman products were made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as

alleged below, Plaintiff Casto was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Casto's above-referenced Craftsman tools were not made in the United States. Plaintiff Casto further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Casto is invoking the laws of West Virginia and Illinois.

33. Plaintiff Jerry Asbury is a citizen of the State of West Virginia. In December 2002, Plaintiff Asbury purchased a Craftsman screwdriver set; in 2003, a Craftsman wrench set, straight blade cutting tool, and socket set; in 2004, two Craftsman circular blades and drill bit set; and in 2005, a Craftsman leaf blower. All these purchases were made at the Town Center Sears in Charleston, West Virginia. Before making these purchases, Plaintiff Asbury saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, on advertisements in the Sunday local newspaper and on television advertisements. At the time of his purchases, and as a result of seeing the advertisements, Plaintiff Asbury believed that each of the above-referenced Craftsman products were made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Asbury was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On information and belief, Plaintiff Asbury's above-referenced Craftsman tools were not made in the United States. Plaintiff Asbury further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Asbury is invoking the laws of West Virginia and Illinois.

34. Plaintiffs Nancy & David Freid are citizens of the State of Minnesota. Between 2002 and 2006, Plaintiffs Freid purchased Craftsman wrenches, screwdrivers, sockets, power tools, and saws, from the Sears store in Mankato, Minnesota. Shortly before making these purchases, Plaintiffs Freid saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of the United States flag, in Sears magazine advertisements, in-store advertisements, and on the packaging for the tools themselves. At the time of their purchases, and as a result of seeing the magazine advertisements, in-store advertisements, and packaging, Plaintiffs Freid believed that each of the above-referenced Craftsman products was made in the United States, and that belief was the primary factor in their decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiffs Freid were unaware their Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. Some of Plaintiffs Freids' tools were found, on post-purchase inspection, to bear the word "China" on the tool. On information and belief, Plaintiffs Freids' above-referenced Craftsman tools were not made in the United States. Plaintiffs Freid further allege that, but for Sears' material misrepresentations alleged herein, they would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices they paid for those tools. Plaintiffs Freid are invoking the laws of Minnesota and Illinois.

35. Plaintiff Joseph Foss is a citizen of the State of Michigan. Between December 2002 and the present, Plaintiff Foss purchased two Craftsman cordless drills, and several Craftsman tool sets, socket sets, and socket wrench sets, at a Sears store in Battle Creek, Michigan. Shortly before making these purchases, Plaintiff Foss saw and relied on the advertising for the Craftsman line, which stated "Made in USA," and/or included depictions of

the United States flag. At the time of his purchases, and as a result of seeing the Sears Craftsman ads, Plaintiff Foss believed that each of the above-referenced Craftsman products was made in the United States, and that belief was the primary factor in his decision to purchase Craftsman over any other brand. As a result of Sears' concealment, as alleged below, Plaintiff Foss was unaware his Craftsman tools were not made in the United States, until approximately the time this lawsuit was filed. On post-purchase inspection, Plaintiff Foss found indications that his drills were made in China. Plaintiff Foss further alleges that, but for Sears' material misrepresentations alleged herein, he would not have purchased Craftsman tools in the first instance, and/or not at the inflated and premium prices he paid for those tools. Plaintiff Foss is invoking the laws of Michigan and Illinois.

36. Defendant Sears is a corporation organized and existing under the laws of the State of New York, and maintains its principal place of business at 3333 Beverly Road, Hoffman Estates, Illinois 60179.

37. Sears owns and operates a nationwide chain of retail department stores which sell tools. Sears also owns and operates a chain of hardware stores which sells tools, and additionally sells tools through catalogues, television advertising, and the internet.

38. Sears National Customer Relations is located in Hoffman Estates, IL. Sears manages its "Craftsman Club" membership, referenced above, and consumer inquiries from phone banks in Illinois.

## VENUE AND JURISDICTION

39. This Court has jurisdiction pursuant to 28 U.S.C. § 1332(d)(2), which provides federal district courts with original jurisdiction over civil actions in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interests and costs, and is a

class action in which "any member of a class of plaintiffs is a citizen of a state different from any defendant."

40. Venue properly lies in the Northern District of Illinois pursuant to 28 U.S.C. § 1391(b).

## SUBSTANTIVE ALLEGATIONS

41. Sears has sold its Craftsman line of tools for over seventy years. Craftsman tools now generate approximately $4 billion in annual sales.

42. Craftsman tools are represented by Sears to be made to high-quality standards. Sears represents that the tools are of professional grade and explicitly seeks to differentiate them from cheaper, lower quality tools, many of which today are made in foreign countries. Sears has explicitly advertised its tools as higher quality *because* they are made in America by American workers.

**Sears' Advertising**

43. Sears advertises its line of Craftsman tools, generally, as "Made in USA." Many Craftsman tools are also individually labeled "Made in USA," or bear similar designations such as "Made in America," "USA" or the United States flag. Sears' deceptive marketing campaign, touting Craftsman tools as "Made in the USA," was created and run from Illinois. Young & Rubicam, ABD Group, Ogilvy & Mather (through its Illinois-headquartered subdivision, A. Eicoff & Company), have each handled an aspect of Sears' advertising or public relations. ABD Group is located in Chicago, Illinois and both Ogilvy & Mather and Young & Rubicam have Chicago offices. Bravo Marketing Group, and J. Walter Thompson.

44. Sears catalogs, which bear a Hoffman Estates, Illinois return address, are disseminated to consumers nationwide. These catalogs have repeatedly claimed that Craftsman tools are "Made in USA".

45. An example of Sears' Craftsman "Made in USA" advertising in periodicals appeared in the April 2002 issue of *Popular Mechanics*. In that advertisement, a Craftsman tool is pictured under a headline stating:

> MADE IN AMERICA.
> BECAUSE YOU NEED SOMETHING TO
> FIX THE THINGS THAT AREN'T.

See Exhibit A1.

46. A similar advertisement ran in the January and November 2001 issues of *Popular Mechanics*. The 2001 ads contain a photograph of Craftsman tools arranged to look like the American flag, with sockets representing stars, and wrenches representing stripes. Above and below the photograph, it says:

> LIFE, LIBERTY AND THE
> PURSUIT OF MORE TOOLS

> 1,800 CRAFTSMAN HAND TOOLS.
> MADE IN AMERICA. GUARANTEED FOREVER! On the racetrack or in your driveway, the innovative quality and design of Craftsman American made mechanic's hand tools keep getting better so you can work smarter, faster and easier. Wrenches & sockets that grip tight without stripping. Quick-release ratchets that bust open stubborn fasteners even in those hard-to-reach places. Craftsman tools. Quality that has earned a trusted place in America's tool boxes for 70 years.

See Exhibit A2.

47. Subsequent issues of *Popular Mechanics* contained additional Craftsman advertisements invoking patriotic themes. For example, the Craftsman logo appears in bold adjacent to photographs of the St. Louis Arch (in August 2002 and November 2003, see Exhibit

A3); the Statue of Liberty (in September 2002, see Exhibit A4); and the Golden Gate Bridge (in April 2002 and October 2003, see Exhibit A5).

48. The September 2004 issue of *Popular Mechanics* contained another Craftsman advertisement. This ad reads:

> CAN YOU NAME 1600 THINGS STILL MADE IN AMERICA? Over 1,600 Craftsman® hand tools are made in the U.S.A. and guaranteed forever. They're also full of Craftsman ingenuity. Take our adjustable Reflex Wrench. Thanks to its reflexing head, you don't have to reposition it after every turn. So check out over 1,600 hand tools and get guarantee details at Sears or Sears Hardware Stores. Or go online at craftsman.com.

49. Advertisements for Craftsman appearing in the March 2001 and March 2002 issues of *Popular Mechanics* also expressly make the "Made in USA" claim.

50. The display racks that Craftsman tools are sold from tout "Made in USA" claims.

51. The Craftsman website also claims its tools are "Made in USA." That website contains a vibrant image of the American flag with the words "why Craftsman" superimposed on the flag. Next to the flag is the headline "Why You Made Craftsman #1." Under this heading is a subheading, with unqualified language that reads "Made in the USA." This "Made in USA" subheading links the reader to a new page, also emblazoned with the American Flag, as well as a red, white and blue "Made in USA" symbol above a paragraph that states:

> **Craftsman quality. Made in America.**
> Since 1926, Craftsman has been one of the most respected brands in the world. The quality and dependability of Craftsman tools can be directly attributed to the thousands of American workers who have provided their skills and dedication to the setting, maintaining and expanding the high standards of Craftsman quality.

52. Visitors to the Craftsman home page were originally linked directly from the home page to the page with the emblazoned flag and the "Made in the USA" language (the "Why Craftsman" page) through a red bar at the top of the home page labeled "Why Craftsman."

On this original version of the "Why Craftsman" page, the subheading entitled "Made in the USA" was followed by qualifying language indicating that "[o]ver 55,000 Americans, in over 100 towns across the country, work together to produce 80 % of the over 5,100 Craftsman tools." See Exhibit A6.

53. By early January 2005, *i.e.*, less than one month after the filing of the first lawsuit alleging that Sears' claims were misleading, Sears altered the Craftsman website. The qualifying language under the "Made in the USA" subheading was removed. As a result, the website no longer indicated what percentage of Craftsman tools, if any, were made in the United States. See Exhibit A7.

54. Yet another change to the website occurred by mid-March 2005. The "Why Craftsman" link contained in the red bar on the Craftsman home page was removed altogether. The "Why Craftsman" page containing the unqualified "Made in the USA" language could still be accessed, however, by clicking on the "Learn more" link at the bottom right corner of the Craftsman home page. See Exhibit A8.

55. Sears' website, which promotes the deceptive "Made In USA" marketing campaign, was created in and is maintained in Illinois. The terms and conditions governing consumers' use of the website state that "By accessing and using this Website, you agree that your access and use of this Website is subject to the Terms and Conditions, and all applicable laws, as governed by the laws of the State of Illinois, without giving effect to any principles or conflicts of laws."

56. The Craftsman website also allows a consumer to request Craftsman tools catalogs, which are distributed to consumers out of Manteno, Illinois.

57. With such advertising, Sears imbues the entire brand with the "Made in USA" attribute. Sears enhanced such branding when it facilitated and provided footage for the broadcast of "John Ratzenberger's Made In America – Craftsman Tools." This television show first aired on the Travel Channel on January 27, 2004, and has re-aired at least thirteen more times including as recently as April 29, 2005. Sears' advertising agency Ogilvy & Mather also provided footage for the making of this program.

58. "John Ratzenberger's Made In America – Craftsman Tools" was filmed in part at a plant in Springfield, Massachusetts where some Craftsman tools are made. In the episode, it is stated that over 55,000 Americans make Craftsman Tools. Throughout the program, it is implied that the Craftsman brand equates with "Made in USA". Nothing in the program reveals that Craftsman tools are also manufactured in foreign countries.

59. Bob Vila is a renowned home improvement contractor and expert who has hosted home improvement programs on television for decades. Sears paid him to serve as a spokesperson for Craftsman tools for 15 years beginning in approximately 1990. As part of his duties he appeared in Craftsman commercials and on promotional tours.

60. Mr. Vila read scripts for commercials prepared by Ogilvy & Mather in Illinois and overseen by Mr. Fred Ciba, who worked for Sears, also in Illinois.

61. Many of these commercials starring Mr. Vila represented that Craftsman products are made in America. For example, some of these commercials prominently showed Craftsman tools inscribed with "Made in USA", *e.g.,* commercials for the following Craftsman tools: Robo Grip Pliers, Powersnip, Clench Wrench, All-In-One Screwdriver. These commercials also had visual overlays stating that Craftsman tools were "Made in America", "Made in USA", or featuring the Statute of Liberty, *e.g.,* commercial featuring Craftsman tools and representing that

"Do-It-Yourself" is an American tradition, commercial for Grip Master pliers, and a general commercial for Craftsman products. As well, Mr. Vila would often state "Made in America" or "Made in USA" in various Craftsman commercials, *e.g.*, commercials for Quick Wrench, Powersnip, Quiet Pulse Sprinkler, DriverLite screwdriver, Clench Wrench, wratchet and socket set, Bolt-Out nut and bolt remover, clean-n-carry pressure washer, reversible ratcheting wrench, Screw-Out 3 piece set/ 5 piece Power Bolt-Out set, Grip n' Drive, and a commercial featuring Craftsman tools and representing that "Do-It-Yourself" is an American tradition. Some of these commercials aired in 1998, if not earlier, and subsequent years through 2004.

62. Mr. Vila stated that until December 2006 he believed that all Craftsman hand tools were made in America and this belief was due, in part, to his working on Craftsman commercials.

63. A.J. Foyt, who is considered by many as the greatest American automobile racing driver of all time (http://en.wikipedia.org/wiki/A._J._Foyt), has also been paid by Sears to serve as a spokesperson and has been featured in commercials for Craftsman products. These commercials featuring Mr. Foyt have also represented that Craftsman products are made in America. For example, in some of these commercials, Mr. Foyt states as follows:

> People are selling tools today on the market that I don't even think they know where they're made and they are not a quality tool. One thing about the Craftsman tool, its made here and you know that the quality is good.

In some of these commercials it is stated in voiceover "Craftsman hand tools, made in America, guaranteed forever", and/or "Made in America" appears in text across the screen. These Craftsman commercials with Mr. Foyt were aired in 1998, if not earlier, and subsequent years through 2004.

64. Similarly, on information and belief, Sears provides on-line training to its employees, and during that online training, employees are taught to promote Craftsman tools, generally, as "Made in USA" in order to sell more of them.

65. On information and belief, the verbal representations of Sears salespersons to the effect that Craftsman tools are "Made in USA" have been pursuant to Sears marketing programs and/or training.

66. Sears claims that its Craftsman tools are "Made in USA" for its own competitive advantage and to exploit consumers' patriotism. Consumers' willingness to pay a premium for items they believe to be of United States origin is well-documented. Consumers, including Plaintiffs and the Class, will pay and have paid inflated prices for Craftsman tools that are claiming "Made in USA," rather than purchasing cheaper tools, based upon their belief that tools "Made in USA" are of higher quality and because of their preference to buy domestically produced goods and support the American economy and American workers.

**Sears Commences Overseas Manufacturing**

67. Sears decided to manufacture Craftsman products outside of the U.S.A., [redacted] Exhibit Q: Bates No. MDL SEARS 002777-2795, marked by Sears as "confidential" at 2787 ("[redacted]"); Exhibit R: Bates No. MDL SEARS 00099-107, marked by Sears as "confidential" at 100 ("[redacted]").

68. In 2000, [redacted] of Craftsman products were not made in the U.S.A. Exhibit R: Bates No. MDL SEARS 00101, marked by Sears as "confidential". By 2005, [redacted] of Craftsman products were not made in the U.S.A. *Id.*

69. During this time, Sears' executives in Illinois [redacted] *See, e.g.*, Exhibit S: Bates No. MDL SEARS 002907-2942, at 002917, marked by Sears as "confidential", and Exhibit T: Bates No. MDL SEARS 004010-4013, marked by Sears as "confidential".

70. Sears commissioned studies which advised it [redacted]. *See, e.g.*, Exhibit T: Bates No. MDL SEARS 004013, marked by Sears as "confidential", and Exhibit U: Bates No. MDL SEARS 002873-2894 at 002886, marked by Sears as "confidential".

71. Sears' studies concluded that "[redacted]". *See, e.g.*, Exhibit V: Bates No. MDL SEARS 00072-93, at 00091, marked by Sears as "confidential". One study found that "[redacted]" Exhibit W: Bates No. MDL SEARS 005149-5204, at 005173, marked by Sears as "confidential".

72. Concerned about the impact of the increasing manufacture of products outside of the U.S.A., [redacted] *See, e.g.*, Exhibit V: Bates No. MDL SEARS 00072-93, marked by Sears as "confidential". [redacted]. *Id.* at Bates No. MDL SEARS 00084. [redacted]. *Id.* [redacted]

[redacted]. Exhibit V, at Bates No. MDL SEARS 00085; *see also* Bates No. MDL SEARS 00086 [redacted].

73. At the same time, the Craftsman line of products had a profitability margin of [redacted] Exhibit W: Bates No. MDL SEARS 005164, marked by Sears as "confidential". [redacted] *Id.* ("[redacted]").

74. Thus, Sears knew that if it became known that its Craftsman products were not made in the U.S.A. it would be forced to reduce its prices and profit margins on Craftsman to be in line with other manufacturers.

75. Sears decided not to correct the misconception its customers had about the origin of its Craftsman products because such a disclosure would cost it money.

76. Sears chose not to make it known that such a high percentage of its tools were not made in the U.S.A., despite the actual knowledge that its customers believed Craftsman products were made in the U.S.A., because such a disclosure would force Sears to reduce the profit margin on its Craftsman line of products.

**Craftsman tools are produced with substantial foreign parts.**

77. Contrary to the "made in America" message conveyed to consumers, Craftsman tools are produced with substantial foreign parts. For example, Sears sold axes labeled "Made in USA." In fact, the forged metal heads of the axes are imported from China. Labeling the axes as "Made in USA" is deceptive because the metal head, the most substantial component of the tool, that which makes it an ax, is in fact of Chinese origin.

78. Sears has sold hoes, axes, mauls, sledge hammers, pitchforks, mattocks, rakes and tree pruning blades prominently marked as "Made in USA," though the tools are from other countries.

79. For example, Craftsman hoes labeled "Made in USA" and sold by Sears were made also in China. The word "China" is diesunk into the metal, the core part of the tool. See Exhibit B.

80. Craftsman double-sided axes labeled "Made in USA" and sold by Sears had heads with the word "China" diesunk into them and plastic handles engraved "China." Thus, both parts were not U.S. made despite labeling, which said "Made in USA." See Exhibit C.

81. Craftsman splitting mauls bearing "Made in USA" stickers sold by Sears were made in Mexico. On the same mauls, the rubber sleeves that wedge between the head and the handle for a snug fit, read "Made in China." The "Made in USA" claim on the stickers was false and misleading. See Exhibit D.

82. Craftsman sledge hammers sold by Sears also had "Mexico" diesunk on the underside of the metal heads. The rubber sleeves say "Made in China." See Exhibit E.

83. Craftsman pitchforks labeled "Made in USA" and sold by Sears actually had their metal heads, where the tongs are, marked "Austria." Touting them as "Made in USA" was false and misleading. See Exhibit F.

84. Craftsman forked hoes having four teeth were sold by Sears and labeled "Made in USA" but had "Austria" diesunk on the metal heads. Clearly, the core parts were made in Austria. See Exhibit G.

85. Craftsman garden mattocks were labeled "Made in USA" and sold by Sears, although "H.F. India" was diesunk into the metal heads. See Exhibit H.

86. Craftsman wood-handled metal rakes were sold by Sears bearing "Made in USA" labels, but "China" was diesunk into the metal heads. See Exhibit I.

87. Craftsman short-handled heavy duty pitch forks, sold by Sears, were labeled "Made in USA," while "Austria" was clearly diesunk into the metal heads. See Exhibit J.

88. Craftsman tree prune saw blades sold by Sears were labeled "Made in USA," while on the metal heads they were marked "Denmark." See Exhibit K.

89. This practice has been continuing. In March 2005, Craftsman pick mattocks sold by Sears were labeled "Made in USA" while the metal head had "India" diesunk in it. See Exhibit L.

90. In late April 2005, Sears carried Craftsman Auto-Loading Multi Bit Screwdrivers containing handle and 6 Hex Bits had a stamp indicating that product is made in Canada. The same product was advertised in a store poster, however, as "Made in USA," not Canada. See Exhibit M.

91. The laws of Illinois and other states, and federal law, recognize that false statements of origin are misleading and actionable. *See, e.g.*, 815 ILCS 510/2(a)(4); 15 U.S.C. § 1125(a)(1). The Federal Trade Commission ("FTC" or "Commission") has publicized its view that such labeling is improper:

> In December 1997, after a comprehensive policy review, the FTC concluded that "Made in USA" advertising and labeling claims

> must continue to conform to the "all, or virtually all," standard that traditionally has been applied by the Commission. Under this standard, unqualified U.S. origin claims must be substantiated by evidence that a product is "all, or virtually all," made in the United States. In addition, the agency issued an Enforcement Policy Statement outlining the factors the Commission will consider in determining whether a U.S. origin claim is "deceptive." In December 1998, the FTC issued a new business guide: "Complying with the Made in USA Standard."

FTC Press Release, Jore Corporation Agrees to Settle FTC Charges of Making Misleading "Made in USA" Claims, February 6, 2001.

92. Jore Corporation ("Jore") is a manufacturer and supplier of Craftsman tools. In February 2001, Jore agreed to settle FTC charges of making misleading "Made in USA" claims. In the FTC's complaint against Jore, the Commission specifically alleged that the Craftsman Speed-Lok, 7/16" Hex Shank Wood Boring Bit (½"), among other tools, was improperly labeled "Made in USA." Thus, Sears must be aware that its own misrepresentations about the country of origin of Craftsman tools also violate FTC standards.

93. Sears has represented that its line of Craftsman tools are "Made in USA," *i.e.*, that all, or virtually all, of the component parts of the products are made in the United States, and the labor in manufacturing the products is performed in the United States. According to Plaintiffs and under the FTC guidelines, these representations were false or misleading because these products were actually made with significant foreign components.

94. FTC guidelines also prohibit Sears from implying the entire Craftsman line is "Made in USA" as it does. According to the guidelines, "manufacturers and marketers should not indicate, either expressly or implicitly, that a whole product line is of U.S. origin when only some products in the product line are made in the U.S. according to the 'all or virtually all' standard." *See* http://www.ftc.gov/bcp/conline/pubs/buspubs/madeusa.htm. One might think the FTC is describing Sears Craftsman advertising itself when the FTC states:

> In identifying implied claims, the Commission focuses on the overall impression of the advertising, label, or promotional material. Depending on context, U.S. symbols or geographic references (for example, U.S. flags, outlines of U.S. maps, or references to U.S. locations of headquarters or factories) may convey a claim of U.S. origin either by themselves, or in conjunction with other phrases or images.

*Id.*

95. As such, Sears' promotion of Craftsman tools with "Made in USA" designations, American flags and other patriotic representations are false or misleading and violate FTC and other standards because Craftsman products are actually made with significant foreign components.

**Sears' Cover-Up**

96. Shortly after the December 2, 2004 filing in New York Supreme Court of the first lawsuit alleging that Sears' "Made in USA" labeling was false and misleading, Sears began to alter the manner in which it advertises and labels its Craftsman tools.

97. On information and belief, Sears issued a memorandum from its Illinois headquarters to its sales managers. In that memorandum, the sales managers were directed to instruct their employees to obliterate false "Made in USA" claims on Craftsman tool labels, either by taping over those false claims or using markers to black them out.

98. Sears employees have complied with the memo from headquarters at many store locations.

99. For example, a Craftsman 4-in-1 Reversible Screwdrivers with bit sizes P1, P2, 3/16, 1/4-in. sold by Sears had packaging with the phrase "Made in USA" blackened over on both the font and the back of the label. See Exhibit N.

100. A Craftsman soil cultivator sold by Sears had the phrase "Made in USA" on the label and blackened over. The metal head had "Austria" diesunk in it. See Exhibit O.

101. On information, belief and observation, the blackening or labeling over the "Made in USA" representations has occurred across the country. Such alterations of the "Made in USA" designations has been observed at:

(a) Sears at Sunvalley Mall, 1001 Sunvalley Boulevard, Concord, California;

(b) Sears at Hilltop Mall, 2300 Hilltop Mall Road, Richmond, California;

(c) Sears at 3450 South Maryland Parkway, Las Vegas, Nevada;

(d) Sears at Rockaway Town Square Mall, Rockaway, New Jersey;

(e) Sears at 5137 Nesconset Highway, Port Jefferson, New York;

(f) Sears at King of Prussia Mall, 160 North Gulph Road, King of Prussia, Pennsylvania;

(g) Orchard Supply Hardware, 1024 Ashby Avenue, Berkeley, California;

(h) Orchard Supply Hardware, 2050 Monument Boulevard, Concord, California; and

(i) Orchard Supply Hardware, 5525 West Sunset Boulevard, Los Angeles, California.

102. In the Summer of 2005, a former in-store marketing manager at a Sears store in Colorado received an internal e-mail instructing him and other staff to black out the words "Made in USA" on approximately 25-50 Craftsman tools.

103. Plaintiffs seek equitable relief and actual economic damages on behalf of all Class members, including reimbursement for any and all economic damage sustained as a result of the misrepresentations described above.

## TOLLING OF THE STATUTE OF LIMITATIONS AND FRAUDULENT CONCEALMENT

104. Plaintiffs and the Class reasonably relied on Sears' representations in advertising Craftsman products, and did not examine the products themselves, pre-purchase, for indications that Sears' representations were false. Thus, Plaintiffs and the Class neither knew nor should have known that Sears' Craftsman tools were not made, or substantially made, in the United States, or that specific tools they purchased were not "Made in USA," until media coverage of the issue occurred shortly before the filing of this action. Accordingly, Plaintiffs and the Class were not on notice that Craftsman products were not made in the USA and could not have discovered the truth about Craftsman tools through reasonable inquiry or inspection.

105. As alleged herein, Sears misrepresented the fact that the Craftsman line was "Made in the USA," and Plaintiffs and other members of the Class relied on this misrepresentation when they purchased their Craftsman products. Plaintiffs and the Class would not have purchased their Craftsman products had they been aware Sears' representations were false. Sears intended to induce Plaintiffs and the Class to believe Craftsman tools were made in the United States, in an effort to maintain or increase sales. Sears concealed the material fact that Craftsman tools were not made, or substantially made, in the United States.

106. Further evidence of Sears fraudulent concealment includes the "cover-up" allegations above, at paragraphs 96-102, and allegations concerning the changes to Sears website, above at paragraphs 51-54.

## CLASS ACTION ALLEGATIONS

107. Plaintiffs brings this class action pursuant to Fed R. Civ. P. 23 on behalf of themselves and all members of the following class (the "Class"):

> All persons and entities throughout the United States who purchased one or more Craftsman tool(s) which were not all or virtually all "Made in USA." Excluded from the Class are Defendant, its subsidiaries, parents, divisions, or affiliates, and its officers and directors.

108. Plaintiffs believe that there are hundreds of thousands of members of the Class as described above, though the exact number and the identities of the Class members are currently unknown to Plaintiffs.

109. The members of the Class are so numerous that joinder of all Class members is impracticable.

110. Common questions of law and fact exist as to all members of the Class and predominate over any questions affecting solely individual members of the Class. Among the questions of law and fact common to the Class are:

(a) whether Sears violated the applicable state consumer fraud acts by committing the deceptive business practices alleged herein;

(b) whether Sears was unjustly enriched by selling Craftsman tools as "Made in USA" when they were made elsewhere;

(c) whether Sears misrepresented Craftsman tools' country of origin to create the impression they are of high quality and to exploit American consumers' patriotism;

(d) whether the sales and promotional literature, advertisements, website and other information, disseminated to the public by Sears or its agents regarding its Craftsman tools, misrepresented material facts about the country of origin of those tools by claiming they were "Made in USA";

(e) whether Sears' false representations were intended to create goodwill and garner additional sales for Sears and inflate the prices of Craftsman tools;

(f) whether Sears acted willfully, recklessly or negligently in omitting

and/or misrepresenting material facts about the country of origin of Craftsman tools; and

(g) the proper measure of damages to the Class.

111. Plaintiffs' claims are typical of the claims of the other members of the Class as Plaintiffs and all members of the Class sustained damages arising out of Defendant's conduct in violation of the applicable consumer fraud acts, as complained of herein.

112. Plaintiffs will fairly and adequately represent and protect the interests of the Class. Plaintiffs have retained able counsel with extensive experience in class action litigation. The interests of Plaintiffs are coincident with and not antagonistic to the interests of the other Class members.

113. The questions of law and fact common to the members of the Class predominate over any questions affecting only individual members, including legal and factual issues relating to liability and damages.

114. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable. Moreover, because the damages suffered by individual members of the Class may be relatively small, the expense and burden of individual litigation make it impossible for the members of the Class individually to redress the wrongs done to them. The Class is readily definable and prosecution of this action as a class action will eliminate the possibility of repetitious litigation. There will be no difficulty in the management of this action as a class action.

## COUNT I

## DAMAGES UNDER THE ILLINOIS CONSUMER FRAUD ACT

115. The preceding allegations are re-alleged and incorporated by reference as if fully set forth herein.

116. Plaintiffs and the Class[3] are consumers within the meaning and coverage of the Illinois Consumer Fraud and Deceptive Business Practices Act ("Illinois Consumer Fraud Act"), 815 ILCS 505/1 et seq.

117. The Illinois Consumer Fraud Act provides:

> Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception, fraud pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act," approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby.

815 ILCS 505/2.

118. Because of its non-disclosure of material facts alleged above, Sears deceived and continues to deceive Plaintiffs and other members of the Class. Sears' deceptive conduct occurred in the course of its engaging in trade or commence.

---

[3] As stated above, this Court has dismissed all claims brought under the Illinois Consumer Fraud Act (CFA) by non-Illinois-resident plaintiffs who purchased tools outside of Illinois. This Court has also held that said claims need not be replead to preserve the issue of the viability of those claims under the Illinois CFA for appeal. See Pre-Trial Order # 6, 7/31/06 at par 2. Therefore, this count is brought on behalf of the remaining Illinois plaintiff, William Beanblossom. This Court upheld Beanblossom's Illinois CFA claim on 5/17/2006, see Mem. Op. at pp. 6-7, and noted that the Illinois CFA claim was viable and adequately pled at a status on June 6, 2006. See Transcript at p 12, 31, " ...you're [Sears] litigating in regard to what I have found to be sufficient," 36-37. As well, the Court indicated that Beanblossom's CFA claim was upheld and by implication need not be replead in its Pre-Trial Order # 5 (6-08-06) at pp. 3-4 and note 1. Pursuant to these orders, Beanblossom sat for a deposition lasting approximately 6 & 3/4 hours. However, the Court appears to have dismissed Beanblossom's previously sustained Illinois CFA claim, Plaintiff's contend in error, when it dismissed other state CFA claims under other state Consumer Fraud statutes. See pre-Trial Order # 6 , 7/31/06 at par 1,2, perhaps incorrectly indicating that the Court had previously dismissed Beanblossom's CFA claim. Beanblossom reasserts his Illinois CFA claim herein.

119. By advertising and marketing its Craftsman tools in various media including broadcasts, website, and written promotional and other materials, Sears has intentionally attempted to mislead and has misled and continues to mislead consumers as to the country of origin of Craftsman tools as described above. Sears engaged in these deceptive acts and practices in order that Plaintiffs and the other members of the Class, in reliance thereof, would enter Sears' stores, purchase Sears' Craftsman tools and make other purchases at Sears' stores.

120. The unfair and deceptive trade acts and practices of Sears have directly, foreseeably and proximately caused damages to Plaintiffs and other members of the Class. Sears' use of the "Made in USA" claim for Craftsman tools was designed to create an impression relating to its products. As a result, Sears sold Craftsman products at a price higher than it would otherwise have been able to charge.

121. Sears' actions and omissions to act, including the false and misleading express and/or implied representations and omissions of material fact regarding the country of origin of Craftsman tools, constitute acts, uses or employment by Defendant and its agents of deception, unconscionable commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of a product, in violation of the Illinois Consumer Fraud Act, making such deceptive acts and practices illegal.

122. Plaintiffs and other members of the Class have been injured in their business and property by reason of Sears' unfair or deceptive acts alleged in this Count. Their injury consists of paying higher prices for Craftsman tools than they otherwise would have paid in the absence of these violations. This injury is of the type the Illinois Consumer Fraud Act was designed to

prevent and directly results from Sears' unlawful conduct. Had Sears disclosed that some of its tools were not made in the United States, it would have been forced by market conditions to charge a lower price for those tools, commensurate with the marketplace for similar tools.

## COUNT II

## INJUNCTIVE RELIEF UNDER THE ILLINOIS DECEPTIVE TRADE PRACTICES ACT

123. The preceding allegations are re-alleged and incorporated by reference as if fully set forth herein.

124. Plaintiffs and other members of the Class[4] seek injunctive relief under the Illinois Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*

125. The Illinois Deceptive Trade Practices Act provides that:

> (a) A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person:
>
> * * *
>
> (2) causes likelihood of confusion or of misunderstanding as to the source, sponsorship, approval, or certification of goods or services; [or]
>
> * * *
>
> (4) uses deceptive representations or designations of geographic origin in connection with goods or services[.]

815 ILCS 510/2(a)(2) and (4).

[4] As stated above, this Court dismissed on May 17, 2006, all claims by non-Illinois plaintiffs under the Illinois Deceptive Trade Practices Act; therefore, counsel for Plaintiffs understands that Count II is proceeding with respect to those Plaintiffs and Class members who reside in, or purchased their Craftsman tools in, Illinois only ("Illinois Plaintiffs"). The language of Count II includes all Plaintiffs and members of the Class solely for the purpose of preserving the non-Illinois Plaintiffs' right to appeal.

126. Because of its non-disclosure of material facts alleged above, Sears deceived and continues to deceive Plaintiffs and other members of the Class. Sears' deceptive conduct occurred in the course of its engaging in trade or commence.

127. By advertising and marketing its Craftsman tools in various media including broadcasts, website, and written promotional and other materials, Sears has intentionally and willfully attempted to mislead and has misled and continues to mislead consumers as to the country of origin of Craftsman tools as described above. Sears engaged in these deceptive acts and practices in order that Plaintiffs and the other members of the Class, in reliance thereof, would enter Sears' stores, purchase Sears' Craftsman tools, and make other purchases at Sears' stores.

128. The unfair and deceptive trade acts and practices of Sears have directly, foreseeably and proximately caused damages to Plaintiffs and other members of the Class.

129. Sears' actions and omissions to act, including the false and misleading express and/or implied representations and omissions of material fact regarding the country of origin of Craftsman tools causes a likelihood of confusion or of misunderstanding as to the source of its Craftsman tools and constitutes the use of deceptive representations or designations of geographic origin in connection with its Craftsman tools in violation of the Illinois Deceptive Trade Practices Act, making such deceptive acts and practices illegal.

## COUNT III

## DAMAGES AND/OR INJUNCTIVE RELIEF PURSUANT TO THE APPLICABLE CONSUMER FRAUD AND DECEPTIVE TRADE PRACTICE ACTS OF OTHER STATES

130. The preceding allegations are re-alleged and incorporated by reference as if fully set forth herein.

131. This Count is pled with respect to all Plaintiffs and Class members, other than the Illinois Plaintiffs. Those Plaintiffs and Class members are consumers within the meaning and coverage of consumer fraud and deceptive trade practices statutes in states other than Illinois ("Other State Consumer Fraud Protection and Deceptive Trade Practices Statutes").

132. Other State Consumer Fraud Protection and Deceptive Trade Practices Statutes have materially and substantially similar provisions to 815 ILCS 505/2 *et seq.* and 815 ILCS 510/1 *et seq.*

(a) Sears engaged in unfair competition or deceptive acts or practices in violation of Ala. Code § 8-19-1 et seq.

(b) Sears engaged in unfair competition or deceptive acts or practices in violation of Alaska Stat. § 45.50.471 et seq.

(c) Sears engaged in unfair competition or deceptive acts or practices in violation of Ariz. Rev. Stat. § 44-1522 et seq.

(d) Sears engaged in unfair competition or deceptive acts or practices in violation of Ark. Code § 4-88-101 et seq.

(e) Sears engaged in unfair competition or deceptive acts or practices in violation of Cal. Civ. Code § 1770, et seq. and Cal. Bus. & Prof. Code §§ 17200, 17500 et seq.

(f) Sears engaged in unfair competition or deceptive acts or practices or has made false representations in violation of Colo. Rev. Stat. § 6-1-105 et seq.

(g) Sears engaged in unfair competition or deceptive acts or practices in violation of Conn. Gen. Stat. § 42-110b et seq.

(h) Sears engaged in unfair competition or deceptive acts or practices in

violation of 6 Del. Code § 2511 et seq.

(i) Sears engaged in unfair competition or deceptive acts or practices or made false representations in violation of D.C. Code Ann. § 28-3901 et seq.

(j) Sears engaged in unfair competition or deceptive acts or practices in violation of Fla. Stat. § 501.201 et seq.

(k) Sears engaged in unfair competition or deceptive acts or practices in violation of Ga. Stat. § 10-1-392 et seq.

(l) Sears engaged in unfair competition or deceptive acts or practices in violation of Haw. Rev. Stat. § 480 et seq.

(m) Sears engaged in unfair competition or deceptive acts or practices in violation of Idaho Code § 48-601 et seq.

(n) Sears engaged in unfair competition or deceptive acts or practices in violation of Ind. Code §24-5-0.5 et seq.

(o) Sears engaged in unfair competition or deceptive acts or practices in violation of Iowa Code §714.16 et seq.

(p) Sears engaged in unfair competition or deceptive acts or practices in violation of Kan. Stat. Ann. § 50-623 et seq.

(q) Sears engaged in unfair competition or deceptive acts or practices in violation of Ky. Rev. Stat. § 367.110 et seq.

(r) Sears engaged in unfair competition or deceptive acts or practices in violation of La. Rev. Stat. § 51:1401 et seq.

(s) Sears engaged in unfair competition or deceptive acts or practices in violation of 5 Me. Rev. Stat. Ann. § 207 et seq.

(t) Sears engaged in unfair competition or deceptive acts or practices in violation of Massachusetts General Laws Ch. 93A et seq.

(u) Sears engaged in unfair competition or deceptive acts or practices in violation of Md. Com. Law Code § 13-101 et seq.

(v) Sears engaged in unfair competition or deceptive acts or practices in violation of Mich. Stat. § 445.901 et seq.

(w) Sears engaged in unfair competition or deceptive acts or practices in violation of M.S.A. § 3.25F.69 et seq. and M.S.A. § 325D.44 et seq.

(x) Sears engaged in unfair competition or deceptive acts or practices in violation of Miss. Code Ann. § 75-24-1 et seq.

(y) Sears engaged in unfair competition or deceptive acts or practices in violation of Mo. Ann. Stat. § 407.010 et seq.

(z) Sears engaged in unfair competition or deceptive acts or practices in violation of Mont. Code § 30-14-101 et seq.

(aa) Sears engaged in unfair competition or deceptive acts or practices in violation of Neb. Rev. Stat. § 59-1601 et seq.

(bb) Sears engaged in unfair competition or deceptive acts or practices in violation of Nev. Rev. Stat. §§ 41.600 and 598.0903 et seq.

(cc) Sears engaged in unfair competition or deceptive acts or practices in violation of N.H. Rev. Stat. § 358-A:1 et seq.

(dd) Sears engaged in unfair competition or deceptive acts or practices in violation of violation of N.J. Rev. Stat. § 56:8-1 et seq.

(ee) Sears engaged in unfair competition or deceptive acts or practices in

violation of N.M. Stat. § 57-12-1 et seq.

(ff) Sears engaged in unfair competition or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349 et seq.

(gg) Sears engaged in unfair competition or deceptive acts or practices in violation of N.C. Gen. Stat. §§ 75-1.1 et seq.

(hh) Sears engaged in unfair competition or deceptive acts or practices in violation of N.D. Cent. Code § 51-15-01 et seq.

(ii) Sears engaged in unfair competition or deceptive acts or practices in violation of Ohio Rev. Stat. § 1345.01 et seq.

(jj) Sears engaged in unfair competition or deceptive acts or practices in violation of Okla. Stat. 15 § 751 et seq.

(kk) Sears engaged in unfair competition or deceptive acts or practices in violation of Or. Rev. Stat. § 646.605 et seq.

(ll) Sears engaged in unfair competition or deceptive acts or practices in violation of 73 Pa. Stat. § 201-1 et seq.

(mm) Sears engaged in unfair competition or deceptive acts or practices in violation of R.I. Gen. Laws § 6-13.l-1 et seq.

(nn) Sears engaged in unfair competition or deceptive acts or practices in violation of S.C. Code Laws § 39-5-10 et seq.

(oo) Sears engaged in unfair competition or deceptive acts or practices in violation of S.D. Code Laws § 37-24-1 et seq.

(pp) Sears engaged in unfair competition or deceptive acts or practices in violation of Tenn. Code Ann. § 47-18-101 et seq.

(qq) Sears engaged in unfair competition or deceptive acts or practices in violation of Tex. Bus. & Com. Code § 17.41 et seq.

(rr) Sears engaged in unfair competition or deceptive acts or practices in violation of Utah Code § 13-11-1 et seq.

(ss) Sears engaged in unfair competition or deceptive acts or practices in violation of Vt. Stat. § 2451 et seq.

(tt) Sears engaged in unfair competition or deceptive acts or practices in violation of Va. Code § 59.1-196 et seq.

(uu) Sears engaged in unfair competition or deceptive acts or practices in violation of Wash. Rev. Code § 19.86.010 et seq.

(vv) Sears engaged in unfair competition or deceptive acts or practices in violation of W. Va. Code § 46A-6-101 et seq.

(ww) Sears engaged in unfair competition or deceptive acts or practices in violation of Wis. Stat. § 100.18 et seq.

(xx) Sears engaged in unfair competition or deceptive acts or practices in violation of Wyo. Stat. Ann. § 40-12-101 et seq.

133. Because of its non-disclosure of material facts alleged above, Sears deceived and continues to deceive Plaintiffs and the other members of the Class. Sears' deceptive conduct occurred in the course of its engaging in trade or commence.

134. By advertising and marketing its Craftsman tools in various media including broadcasts, website, and written promotional and other materials, Sears has intentionally attempted to mislead and has misled and continues to mislead consumers as to the country of origin of Craftsman tools as described above. Sears engaged in these deceptive acts and

practices in order that Plaintiffs and the other members of the Class, in reliance thereof, would enter Sears' stores, purchase Sears' Craftsman tools and make other purchases at Sears' stores.

135. The unfair and deceptive trade acts and practices of Sears have directly, foreseeably and proximately caused damages to Plaintiffs and the other members of the Class. Sears' use of the "Made in USA" claim for Craftsman tools was designed to create an impression relating to its products. As a result, Sears sold Craftsman products at a price higher than it would otherwise have been able to charge.

136. Sears' actions and omissions to act, including the false and misleading express and/or implied representations and omissions of material fact regarding the country of origin of Craftsman tools, constitute acts, uses or employment by Defendant and its agents of deception, unconscionable commercial practices, false pretenses, false promises, misrepresentations, or the knowing concealment, suppression or omission of material facts with the intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of a product, in violation of the Other State Consumer Fraud Protection and Deceptive Trade Practices Statutes, making such deceptive acts and practices illegal.

137. Plaintiffs and members of the Class have been injured in their business and property by reason of Sears' unfair or deceptive acts alleged in this Count. Their injury consists of paying higher prices for Craftsman tools than they otherwise would have paid in the absence of these violations. This injury is of the type the Other State Consumer Fraud Protection and Deceptive Trade Practices Statutes were designed to prevent and directly results from Sears' unlawful conduct.

## COUNT IV

## UNJUST ENRICHMENT

138. The preceding allegations are realleged and incorporated by reference as if fully set forth herein.

139. Plaintiffs and other members of the Class bring this claim under the unjust enrichment laws of the state of Illinois, where Sears is headquartered. In the alternative, Plaintiffs and other members of the Class bring this claim under the unjust enrichment laws of their home states, respectively, or the states wherein they purchased their Craftsman tools. The unjust enrichment laws of Plaintiffs' respective states are substantially similar for purposes of national class certification. *See e.g., In re Terazonin Hydrochloride Antitrust Litig.*, 220 F.R.D. 672, 697 n. 40 (S.D. Fla. 2004).

140. By virtue of the allegations stated herein, Sears has been unjustly enriched to the extent that it has inequitably and knowingly received and retained a monetary benefit from selling Craftsman tools to the Class, at the expense of the Class.

141. Specifically, by promoting Sears Craftsman tools as made in USA, Sears (a) substantially increased its sales of Craftsman products; and (b) increased its total store sales by virtue of customers arriving at Sears to purchase Craftsman "Made in USA" products and purchasing other products as well. The total amount by which Sears has been unjustly enriched has not been ascertained at this time and will be proven at trial, but such damages are believed to be in the millions of dollars.

142. Plaintiffs seek disgorgement of amounts by which Sears has been unjustly enriched by virtue of its false, misleading advertising of Craftsman products. The disgorgement remedy inures to the benefit of the Class.

## COUNT VI

## EQUITABLE RELIEF

143. The preceding allegations are realleged and incorporated by reference as if fully set forth herein.

144. Plaintiffs and the other members of the Class seek the following equitable relief:

(a) That a judicial determination and declaration be made of the rights of Plaintiffs and the Class and the corresponding responsibilities of Defendant;

(b) That Defendant be declared financially responsible for the costs and expenses of providing restitution and refunds to Plaintiffs and the other members of the Class;

(c) That Defendant be ordered to give adequate descriptions of the country of origin of Craftsman tools, and that it be stopped and enjoined from making blanket claims that Craftsman tools are "Made in USA"; and

(d) That Sears be ordered to disgorge, for the benefit of the Class, its ill-gotten profits and to make full restitution to Plaintiffs and the other members of the Class.

## COUNT VII

## BREACH OF WARRANTY UNDER THE MAGNUSON-MOSS WARRANTY ACT

145. The preceding allegations are realleged and incorporated by reference as if fully set forth herein.

146. This Count alleges breach of warranty under the Magnuson-Moss Warranty Act on behalf of all Plaintiffs and Class members.[5]

---

[5] In its order dated May 17, 2006, the Court dismissed Plaintiffs claims for breach of express warranty under the Magnuson-Moss Warranty Act. This Count is stated herein solely for the purpose of preserving it for appeal.

147. Defendant made public representations in several series of national magazine and other advertisements, which were viewed by and relied on by Plaintiffs and other members of the Class, featuring the Sears Craftsman logo, and which stated, in part:

**MADE IN AMERICA.**

**BECAUSE YOU NEED SOMETHING TO**

**FIX THE THINGS THAT AREN'T.**

> There's something about a tool that's made in America...we'd like to point out that, when you see those three mighty words on our hand tools, they do not just tell you where it was made. They tell you how it was made...at Craftsman we not only meet the strict standards of ANSI,[6] we often exceed them. In fact we're so confident our hand tools are well made, every one comes with this guarantee: If any hand tool ever fails to give you complete satisfaction, we'll repair it or replace it free of charge. ***So get your hands on the tools that are made by thousands of Americans all across the country.*** Craftsman.
> *See e.g.,* Exhibit A1 (emphasis added).

148. Defendant also made representations in newspaper, magazine, television, on-line, and in-store advertisements for Craftsman tools, stating that ***because Craftsman tools were produced in America and made by American workers, they were of higher quality and dependability than other tools***. For example, Sears website as of November 30, 2004, boasted the American flag and stated:

> **Craftsman Quality. Made in America.**
> Since 1926, Craftsman has been one of the most respected brands in the world. ***The quality and dependability of Craftsman tools can be directly attributed to the thousands of American workers*** who have provided their skills and dedication to setting, maintaining and expanding the high standards of Craftsman quality.
> *See* Exhibit A6 (emphasis added).

149. Defendant also made representations in its advertising, in-store banners and point of purchase displays, on its products, and on some of its packaging and labeling that Craftsman tools were "Made in USA," "Made in America," and/or boasted the American flag.

---

[6] ANSI is the American National Standards Institute, a standardization organization dedicated to enhancing the global competitiveness of U.S. business and the American quality of life.

150. Pursuant to the Magnuson-Moss Warranty Act, 15 USC § 2301 *et seq.* these representations constituted warranties that because the Craftsman tools were made in America and by American workers, they were of higher quality than tools made outside America. The Craftsman tools, however, *were* made outside America and not by American workers; therefore, Defendant's representations could not have been true.

151. Defendant has breached its warranties to Plaintiffs and the Class by selling its Craftsman tools as using the representations cited above and omitting and/or concealing that many of the tools or substantial component parts thereof were actually not "Made in USA," nor made by American workers, nor made in any way superior to tools made outside the United States.

152. Plaintiffs and other Class members purchased Craftsman tools relying on Defendant's representations that the tools were of higher quality because they were made in America and/or by American workers. The tools were not of higher quality than tools made outside the United States.

153. Plaintiffs and other Class members have been damaged by Defendant's breach of its warranty obligations in that the referenced tools did not conform to their descriptions as stated above.

154. The Magnuson-Moss Warranty Act provides for a civil action by consumers for failure to comply with its warranties arising under state law. *See* 15 USC § 2310 (d)(1).

**WHEREFORE**, Plaintiffs, on their own behalf and on behalf of the Class, pray for judgment, as follows:

(a) Declaring this action to be a proper class action and certifying Plaintiffs as class representatives under Fed. R. Civ. P. 23;

(b) Declaring that Sears has been misleading the members of the Class who purchased Craftsman tools;

(c) Awarding compensatory damages in favor of Plaintiffs and the other members of the Class against Sears for the actual damages sustained as a result of the wrongdoings of Defendant, together with interest thereon;

(d) Requiring Sears to disgorge any benefits obtained by it as a result of its conduct described herein;

(e) Declaring that Sears has breached its warranties that Craftsman products were "Made in USA" as to the members of the Class who purchased Craftsman tools;

(f) Enjoining Sears from continuing the illegal activities alleged herein;

(g) Awarding Plaintiffs and the other members of the Class reasonable attorneys' fees and experts' fees and the costs of this action together with all interest allowed by law in connection with the benefits obtained for the Class; and

(h) Granting such other and further relief as this Court deems just and proper.

**JURY DEMANDED**

Plaintiffs hereby demand a trial by jury of all issues so triable.

**Lead Counsel**

By: /s/ Ben Barnow
Ben Barnow
Sharon Harris
**BARNOW AND ASSOCIATES, P.C.**
One North LaSalle Street, Suite 4600
Chicago, IL 60602
(312) 621-2000

By: /s/ Barbara J. Hart
Barbara J. Hart
Shelley Thompson
Natalie Marcus
**LABATON SUCHAROW & RUDOFF LLP**
100 Park Avenue
New York, New York 10017
(212) 907-0700

**Liaison Counsel**

By: /s/ Jennifer W. Sprengel
Jennifer W. Sprengel
Nyran Rose Pearson
**CAFFERTY FAUCHER LLP**
30 North LaSalle Street
Suite 3200
Chicago, Illinois 60602
(312) 782-4880

**Additional Counsel**

Mila F. Bartos
Karen J. Marcus
**FINKELSTEIN THOMPSON & LOUGHRAN**
The Duvall Foundry
1050 30th Street, NW
Washington, D.C. 20007
(202) 337-8000

Lawrence W. Schad
**BEELER, SCHAD & DIAMOND, P.C.**
332 South Michigan Avenue
Suite 1000
Chicago, Illinois 60604
(312) 939-6280

Arthur Gold
**GOLD & COULSON**
11 South LaSalle Street
Suite 2500
Chicago, Illinois 60603
(312) 372-0777

Thomas M. Sobol
Elizabeth Fegan
**HAGENS BERMAN SOBOL SHAPIRO LLP**
60 West Randolph
Suite 200
Chicago, Illinois 60601
(312) 762-9237

William J. Harte
**WILLIAM J. HARTE, LTD.**
111 West Washington Street, Suite 1100
Chicago, Illinois 60602
(312) 726-5015

Aron D. Robinson
**THE LAW OFFICE OF ARON D. ROBINSON**
19 South LaSalle Street, Suite 1300
Chicago, IL 60603
(312) 857-9050

William Bogot
Robert J. Stein III
**STEIN & BOGOT LTD.**
33 North LaSalle Street, 29th Floor
Chicago, IL 60602
(312) 334-4805

Lance A. Harke
**HARKE & CLASBY LLP**
155 South Miami Ave., Suite 600
Miami, FL 33130

John S. Steward
**MEYERKORD & STEWARD, L.L.C.**
2531 Hampton Ave.
St. Louis, MO 63139

Michael T. George
**THE LAW FIRM OF**
**MICHAEL T. GEORGE, P.C.**
2525 S. Brentwood Blvd., Suite 102
St. Louis, MO 63144

**Attorneys for Plaintiffs**

*Chatham, et al. v. Sears, Roebuck & Co.*,
MDL No. 1703,
Case No. 05CV4742

LIST OF EXHIBITS TO
THIRD AMENDED CONSOLIDATED CLASS ACTION COMPLAINT

| | |
|---|---|
| A1 | Popular Mechanics ad |
| A2 | "Life, Liberty and the Pursuit of More Tools" ad |
| A3 | St. Louis arch ad |
| A4 | Statute of Liberty ad |
| A5 | Golden Gate Bridge ad |
| A6 | original Craftsman website (11/30/2004) |
| A7 | Craftsman website (circa Jan. 2005) |
| A8 | Craftsman website (3/14/2005) |
| B | hoe (DSC76-79, 82-84, 101) |
| C | double-sided axes (DSC37-41,105) |
| D | splitting mauls (DSC42-46, 106) |
| E | sledge hammers (DSC13-18, 20-21, 23, 108) |
| F | pitchforks (DSC90-92, 100) |
| G | forked hoes with 4 teeth (DSC85, 87, 89, 99) |
| H | garden mattocks (DSC24-31, 107) |
| I | wood-handled metal rakes (DSC94-96, 98) |
| J | short-handled heavy duty pitchforks (DSC64-67, 104) |
| K | tree prune saw blades (DSC47-49, 110) |
| L | pick mattocks (DSC661, 672, 679), 1 full size picture and 2 close-ups |

M Auto-Loading Multi Bit Screwdrivers (DSC1031, 1036-37, 1039, 1044), 2 full size pictures, 3 close-ups, and 1 picture of a store display

N 4-in-1 Reversible Screwdrivers (DSC1045, 1048, 1050, 1052-53), 2 pictures in packaging, and 3 close-ups

O soil cultivator (DSC667, 681-83, 686), 1 full-size picture and 4 close-ups

GROUP Exhibit P Pamphlets: WB000051-91

Q Bates No. MDL SEARS 002777-2795, marked by Sears as "Confidential"

R Bates No. MDL SEARS 00099-107, marked by Sears as "Confidential"

S Bates No. MDL SEARS 002907-2942, marked by Sears as "Confidential"

T Bates No. MDL SEARS 004010-4013, marked by Sears as "Confidential"

U Bates No. MDL SEARS 002873-2894, marked by Sears as "Confidential"

V Bates No. MDL SEARS 00072-93, marked by Sears as "Confidential"

W Bates No. MDL SEARS 005149-5204, marked by Sears as "Confidential"